UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LACI DANIELLE EILTS,                              No.  2:18-cv-2037 DB

                Plaintiff,

        v.                                         ORDER

ANDREW SAUL, Commissioner of Social
Security,[1]

                Defendant.

      This social security action was submitted to the court without oral argument for ruling on

plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2]

Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion

evidence, witness testimony, and step five finding were erroneous.

////

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019.
See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019).
Accordingly, Andrew Saul is substituted in as the defendant in this action.  See 42 U.S.C. §
405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding
the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action
pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 6 & 8.)

1    For the reasons explained below, plaintiff's motion is granted in part, the decision of the

2    Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for

3    further proceedings consistent with this order.

4                                      **PROCEDURAL BACKGROUND**

5          On March 25, 2013, plaintiff filed an application for Disability Insurance Benefits

6    ("DIB") under Title II of the Social Security Act ("the Act"), alleging disability beginning on

7    September 10, 2012.  (Transcript ("Tr.") at 20, 196-99.)  Plaintiff's alleged impairments included

8    neck and back injury, migraines, and anxiety.  (Id. at 217.)  Plaintiff's application was denied

9    initially, (id. at 111-15), and upon reconsideration.  (Id. at 117-121.)  On October 26, 2015,

10   plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the

11   Act.  (Id. at 207-11.)  This application was joined with the application for DIB.  (Id. at 20.)

12         Plaintiff requested an administrative hearing and a hearing was held before an

13   Administrative Law Judge ("ALJ") on February 17, 2016.  (Id. at 40-75.)  Plaintiff was

14   represented by an attorney and testified at the administrative hearing.  (Id. at 40-42.)  In a

15   decision issued on May 12, 2016, the ALJ found that plaintiff was not disabled.  (Id. at 31.)   The

16   ALJ entered the following findings:

17           1.  The claimant meets the insured status requirements of the Social
             Security Act through December 31, 2017.
18

19           2.  The claimant has not engaged in substantial gainful activity
             since September 10, 2012, the alleged onset date (20 CFR 404.1571
20           *et seq*., and 416.971 *et seq*.).

21           3.  The claimant has the following severe impairments:
             degenerative disc disease; mood disorder; post-traumatic stress
             disorder; and adjustment disorder (20 CFR 404.1520(c) and
22           416.920(c)).

23           4.  The claimant does not have an impairment or combination of
             impairments that meets or medically equals the severity of one of
24           the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
             (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
25           and 416.926).

26           5.  After careful consideration of the entire record, I find that the
             claimant has the residual functional capacity to perform light work
27           as defined in 20 CFR 404.1567(b) and 416.967(b) except for
             occasional stooping, kneeling, crouching, crawling and climb stairs;
28           avoid hazards such as unprotected heights and moving machinery;

1    no overhead reaching; and occasional interaction with the public, co-
     workers and supervisors.

2
     6. The claimant is unable to perform any past relevant work (20
3    CFR 404.1565 and 416.965).

4    7. The claimant was born [in] 1985 and was 27 years old, which is
     defined as a younger individual age 18-49, on the alleged disability
5    onset date (20 CFR 404.1563 and 416.963).

6    8. The claimant has at least a high school education and is able to
     communicate in English (20 CFR 404.1564 and 416.964).
7
     9. Transferability of job skills is not material to the determination of
8    disability because using the Medical-Vocational Rules as a
     framework supports a finding that the claimant is "not disabled,"
9    whether or not the claimant has transferable job skills (See SSR 82-
     41 and 20 CFR Part 404, Subpart P, Appendix 2).
10
     10. Considering the claimant's age, education, work experience, and
11   residual functional capacity, there are jobs that exist in significant
     numbers in the national economy that the claimant can perform (20
12   CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

13   11. The claimant has not been under a disability, as defined in the
     Social Security Act, from September 10, 2012, through the date of
14   this decision (20 CFR 404.1520(g) and 416.920(g)).

15   (Id. at 22-31.)

16      On March 6, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's

17   May 12, 2016 decision.  (Id. at 3-5.)  Plaintiff sought judicial review pursuant to 42 U.S.C. §

18   405(g) by filing the complaint in this action on July 26, 2018.  (ECF. No. 1.)

19                                   **LEGAL STANDARD**

20      "The district court reviews the Commissioner's final decision for substantial evidence,

21   and the Commissioner's decision will be disturbed only if it is not supported by substantial

22   evidence or is based on legal error."  Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

23   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

24   support a conclusion.  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v.

25   Chater, 108 F.3d 978, 980 (9th Cir. 1997).

26      "[A] reviewing court must consider the entire record as a whole and may not affirm

27   simply by isolating a 'specific quantum of supporting evidence.'"  Robbins v. Soc. Sec. Admin.,

28   466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir.

                                              3

1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

**APPLICATION**

Plaintiff's pending motion asserts the following four principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ improperly rejected lay witness testimony; and (4) the ALJ's erred at step five of the sequential evaluation. (Pl.'s MSJ (ECF No. 14) at 10-18.[3])

---

[3] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

**I. Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

**A. Dr. Donna Holscher**

Plaintiff first challenges the ALJ's treatment of the opinion offered by Dr. Donna Holscher, a treating physician. (Pl.'s MSJ (ECF No. 14) at 10-13.) The ALJ discussed Dr. Holscher's opinion, stating:

> On February 11, 2016 Dr. Holscher submitted a medical opinion reflecting a less than sedentary functional capacity, to include restrictions against lifting and carrying less than 10 pounds, standing and walking for less than 2 hours a day, and sitting for less than 2 hours a day (Ex 16F). Such an extremely restricted functional

capacity is excessive, when compared to the examination findings of record which do not describe the claimant as an additional surgical candidate relative to spine complaints, the normal neurological findings of motor strength, sensation and reflexes, and the treatment notes which include the claimant's reporting as to doing well on her medications (Ex 14F pg 2, 29). In light of this evidence, Dr. Holscher's opinion is entitled to little weight.

(Tr. at 27.)

First, it must be acknowledged that

[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

And, when an ALJ elects to afford the opinion of a treating physician less than controlling weight, the opinion must be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ's failure to discuss these factors "alone constitutes reversible legal error." (Id. at 676.)

Moreover, the ALJ's reference here to "findings of record which do not describe the claimant as an additional surgical candidate," is misleading. (Id.) Although the ALJ did not cite to evidence in support of this specific finding, it appears the ALJ is referring to a January 7, 2016 letter from Dr. Tarun Arora to Dr. Elizabeth Hernandez, in response to Dr. Arora's examination of plaintiff. Therein, Dr. Arora states, "I advised [plaintiff] that there are no surgical lesions that I could address that would help her symptoms." (Id. at 703.)

////

6

It is unclear why Dr. Arora's finding of an absence of surgical lesions would serve as a reason for rejecting Dr. Holscher's treating opinion. Dr. Arora also stated, "I'm concerned that [plaintiff] has a chronic pain syndrome and/or a diffuse inflammatory disorder[.]" (Id.) Dr. Arora recommended that plaintiff be evaluated by "neurology and possibly rheumatology." (Id.)

The ALJ also supported the rejection of Dr. Holscher's opinion based on "treatment notes which include the claimant's reporting as to doing well on her medications." (Id. at 27.) But

> [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014). Here, the ALJ supported this finding by citing to only two treatment notes. (Tr. at 27.) Those notes simply reflect that plaintiff reported "doing well with pain meds," and "doing well with her current dosing of Percocet." (Id. at 530, 557.) It is entirely unclear why two instances of plaintiff reporting "doing well" with pain medication undermines Dr. Holscher's treating opinion with respect to plaintiff's work-related functional abilities.

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Holscher's treating opinion.

**B.     Helene Stovall, LCSW**

Plaintiff's treating licensed clinical social worker, Helene Stovall, provided two treating opinions. (Id. at 639-41, 772.) The ALJ discussed these opinions, stating:

> Of record is a mental impairment questionnaire submitted by Helene Stovall, LCSW, expressing the opinion that the claimant was incapable of performing a full-time job on a regular work schedule, and as having predominately moderate to extreme limits in functioning. I agree with Ms. Stoval as to the claimant having only slight limits with regard to her ability to understand, remember and carry out simple instructions, and as having moderate restrictions in terms of her ability to interact appropriately with the general public, to accept instructions and respond appropriately to supervisors and to get along with coworkers. However, while the record supports that the claimant is preoccupied with pain, there is no indication in the record supporting the reporting that the claimant would only be able to focus for more than 5 to 7 minutes before becoming distracted or any reason as to why she would be unable to perform simple instructions even when in pain. This is not consistent or otherwise

|   |   |
|---|---|
| 1 | supported by the treatment notes which reflect a favorable response to medications.  Hence, Ms. Stoval's opinion overall is afforded partial, but not full weight. |
| 2 |  |
| 3 | On March 16, 2016 Ms. Stoval expressed the opinion that the claimant was unable to hold down a job, or anything that would require her to focus and not be distracted by pain, anxiety and depression.  I give the opinion little weight because it is based on the assumption that a job requires no distraction, and does not address simple work that can be performed despite the claimant being depressed, anxious and in pain. |
| 4 |  |
| 5 |  |
| 6 |  |

(Id. at 28.)

In support of this finding the ALJ simply cited to the same two treatment notes showing plaintiff "doing well" on medication, discussed above.  Again, it is error to rely on two such isolated instances.  See Garrison, 759 F.3d at 1017.  Moreover, the ALJ made no attempt to discuss several of the specific limitations opined by LCSW Stoval.

For example, LCSW Stoval opined that plaintiff suffered from PTSD, major depression, and acute anxiety.  (Tr. at 640.)  That the side effects of plaintiff's medications caused sleeplessness, lethargy, and short term memory deficits.  (Tr. at 640.)  That plaintiff had extreme limitation in the ability to maintain attention and concentration.  (Id.)  That plaintiff had marked limitations in the ability to remember locations and work-like procedures, maintain regular attendance, make simple work-related decision, and maintain socially appropriate behavior.  (Id. at 640-41.)  LCSW Stoval also opined that plaintiff would miss work more than three times a month.  (Id. at 641.)

The ALJ failed to discuss these limitations and provide a reason as for why they should be rejected.[4]  Moreover, with respect to the March 15, 2016 opinion, LCSW Stoval's opinion is not based on the assumption that a job requires no distraction and does in fact address why plaintiff cannot perform simple work despite anxiety, depression, and pain.  In this regard, LCSW Stoval

---

[4] The parties discuss LCSW Stoval's opinion as part of the medical opinion evidence.  (Pl.'s MSJ (ECF No. 14) at 11-12; Def.'s MSJ (ECF No. 23) at 6.)  Opinions offered by LCSWs are considered opinions of "other sources."  Thomas v. Astrue, No. CV 07-8040-PLA, 2009 WL 151488, at *3 (C.D. Cal. Jan. 21, 2009).  "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'"  Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Here, the ALJ failed to offer even a germane reason for rejecting LCSW Stoval's opinion.

explains that, as a result of plaintiff's depression becoming "profound" and anxiety developing

"into a full blown anxiety disorder," plaintiff's "depression became almost catatonic," and "made

it impossible for her to present for a job interview, let alone keep and attend a work situation."

(Tr. at 772.)

Accordingly, the court finds that the ALJ's treatment of LCSW Stoval's opinion

constituted error.

**C.      Dr. Miles White, Psy. D.**

On August 19, 2013, Dr. Miles White performed a Complete Mental Evaluation. (Tr. at

405-12.) The ALJ discussed Dr. White's opinion, stating:

> The consultative examiner, Dr. White, assigned the claimant with no
> more than mild limitations in key areas of mental functioning except
> for a moderate restriction for detailed and complex instructions. I
> give little weight to the opinions of the State agency consultants as
> they were given with the benefit of only a partial review of the
> medical records. As for Dr. White, he made no mention as to the
> claimant having more than a mild impairment in relating and
> interacting with co- workers, supervisors and the public. I find from
> the evidence as whole, including the claimant's testimony, that the
> claimant would reasonably be expected to have some problems with
> social interaction. Thus, the opinion of Dr. White is afforded partial,
> but not full weight.

(Id. at 27-28.)

As noted by the ALJ, Dr. White opined that plaintiff would have a moderate restriction for

detailed and complex instructions. (Id. at 411.) However, neither the ALJ's residual functional

capacity ("RFC") determination nor the ALJ's questioning to the Vocational Expert ("VE")

accounted for that restriction. (Id. at 24, 61-74.) Nor did the ALJ give a reason for rejecting this

opined limitation.

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations."

20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5

(9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his

physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the

ALJ must consider the combined effects of an applicant's medically determinable impairments on

the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater,

1 | 93 F.3d 540, 545 (9th Cir. 1996).  The ALJ must consider all of the relevant medical opinions as

2 | well as the combined effects of all of the plaintiff's impairments, even those that are not "severe."

3 | 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003).

4 | "[A]n RFC that fails to take into account a claimant's limitations is defective."  Valentine v.

5 | Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).  The ALJ must determine a

6 | claimant's limitations on the basis of "all relevant evidence in the record."  Robbins v. Soc. Sec.

7 | Admin., 466 F.3d 880, 883 (9th Cir. 2006).

8 |       Moreover, while an ALJ may pose a range of hypothetical questions to a vocational expert

9 | ("VE") based on alternate interpretations of the evidence, the hypothetical question that

10 | ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is

11 | predicated on the ALJ's final residual functional capacity assessment, must account for all of the

12 | limitations and restrictions of the particular claimant.  Bray v. Comm'r of Soc. Sec. Admin., 554

13 | F.3d 1219, 1228 (9th Cir. 2009).  "If an ALJ's hypothetical does not reflect all of the claimant's

14 | limitations, then the expert's testimony has no evidentiary value to support a finding that the

15 | claimant can perform jobs in the national economy."  Id. (citation and quotation marks omitted);

16 | see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011)

17 | ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments,

18 | the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's

19 | findings.").

20 |       Additionally, it is unclear how Dr. White's opined limitation with respect to detailed and

21 | complex instructions reconciles with the ALJ determination that plaintiff could perform two jobs

22 | that require Level 2 reasoning.  Tr. at 31; see DICOT 208.685-010; DICOT 729.687-010.  "Level

23 | Two reasoning . . . requires a person to apply commonsense understanding to carry out detailed

24 | but uninvolved written or oral instructions.'"  Rounds v. Commissioner Social Sec. Admin., 807

25 | F.3d 996, 1003 (9th Cir. 2015) (quotation omitted).

26 |       For the reasons stated above, the court finds that the ALJ's treatment of Dr. White's

27 | opinion constituted error.  Accordingly, plaintiff is entitled to summary judgment on the claim

28 | that the ALJ's treatment of the medical opinion evidence constituted error.

## II.    Plaintiff's Subjective Testimony

Plaintiff next challenges the ALJ's treatment of plaintiff's subjective testimony.  (Pl.'s MSJ (ECF No. 14) at 13-16.)  The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted).  "The clear and convincing standard is the most demanding required in Social Security cases."  Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[5]  Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other

---

[5] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect.  "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness."  Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

11

things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's]

testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work

record, and testimony from physicians and third parties concerning the nature, severity, and effect

of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59

(9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792

(9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the

record, the court "may not engage in second-guessing." Id.

Here, the ALJ found that plaintiff's medically determinable impairments could reasonably

be expected to cause the symptoms alleged, but that plaintiff's statements concerning the

intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with

the medical evidence and other evidence in the record for the reason explained in [the] decision."

(Tr. at 25.) After a general overview of the medical evidence, the ALJ concluded:

> After considering the record in its entirety, I find the above residual
> functional capacity assessment for light work with occasional
> postural limitations[] is appropriate in addressing the claimant's
> spine disorders. To the extent that the claimant alleges a more
> restrictive functional capacity, such allegations are not consistent
> with the objective and clinical evidence found in the medical records.
> Though the evidence confirms a back disorder, the allegations of
> disabling pain are inconsistent with the clinical examination findings,
> which reflect tenderness and limited range in motion in her spine, but
> with otherwise normal motor, sensory and reflex functions, and the
> normal EMG and nerve conduction studies to her upper extremities.
> An overview of the record further shows that the claimant is not
> deemed to be an additional surgical candidate relative to her back
> complaints, and that she has had a favorable response to other
> treatment modalities, which have included epidural lumbar injections
> and pain medications. Her allegations of disabling pain and mental
> symptomology are inconsistent with the claimant's reporting in the
> record as to doing well and being anxiety free, that she was sleeping
> well and enjoying activities of painting and walking, and that she was
> more functional than she had ever been. In addition, examiners have
> commented as to the claimant showing evidence for symptom
> magnification. Based on the cervical spine disorder, the preclusion
> from overhead reaching is also included. As exposure to hazards
> such as heights and moving machinery could be problematic because
> of her medications, the inclusion of these restrictions into the residual
> functional capacity assessment serve as a prophylactic precaution.
> The record additionally shows that the claimant has mood and post-
> traumatic stress disorders, but that she has attained a good response
> to treatment. The record overall supports no more than moderate
> deficits in social functioning because of her mental disorders, and is

1    accommodated by restricting the claimant to occasional interaction
     with the public, co-workers and supervisors.
2

3    (Tr. at 29.)

4          Although plaintiff challenges many of the ALJ's findings, in rejecting plaintiff's

5    testimony the ALJ relied, in part, on "evidence for symptom magnification." (Tr. at 29.)

6    Symptom magnification can also be characterized as "exaggeration." Buck v. Barnhart, 238

7    F.Supp.2d 1255, 1263 (D. Kan. 2002). Or, "less politely, faking." McGahey v. Harvard

8    University Flexible Benefits Plan, 260 F.R.D. 10, 12 (D. Mass. 2009).

9          In support of this finding the ALJ cited to a February 28, 2014 treatment note from Dr.

10   Robert Hansen, who found "[s]ymtpom amplification possibly present." (Tr. at 457.) Although

11   the ALJ cited to only one such record, Dr. Amy Maher also made this finding repeatedly in

12   plaintiff's treatment notes. (Id. at 463, 468, 473.)

13         "An ALJ may discount a claimant's testimony based on a physician's observation that

14   there is reason to suspect exaggeration of symptoms." Delarosa v. Berryhill, No. 2:17-cv-0423

15   AC, 2018 WL 4611362, at *8 (E.D. Cal. Sept. 26, 2018) (citing Williamson v. Commissioner Of

16   Social Security, 438 Fed. Appx. 609, 611 (9th Cir. 2011) ("Although not every reason given by

17   the ALJ met this standard, it was nonetheless proper for the ALJ to discount Williamson's

18   testimony based on Dr. Eckstein's observation that there was reason to suspect that Williamson

19   exaggerated her symptoms.")).

20         For the reasons stated above, the court finds that the ALJ offered a clear and convincing

21   reason for rejecting plaintiff's testimony. Accordingly, plaintiff is not entitled to summary

22   judgment on the claim that the ALJ's treatment of plaintiff's subjective testimony constituted

23   error.

24   **III.    Lay Witness Testimony**

25         Plaintiff next argues that the ALJ improperly rejected lay witness testimony. (Pl.'s MSJ

26   (ECF No. 14) at 16-17.) The testimony of lay witnesses, including family members and friends,

27   reflecting their own observations of how the claimant's impairments affect her activities must be

28   considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir.

13

2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Here, the ALJ acknowledged the lay witness statement offered by plaintiff's mother. (Tr. at 30.) The ALJ afforded the statement "only partial weight" because the statement was "mostly a reflection of the subjective complaints already testified to and reported by the claimant." (Id.) An ALJ may cite the same reasons for a rejecting plaintiff's statements to reject third-party statements where the statements are similar. See Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012) ("if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness"); Valentine, 574 F.3d at 694 (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints). .

Because the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony, that same reason constitutes a germane reason to reject the lay witness testimony. See Bennett v. Colvin, 202 F.Supp.3d 1119, 1131 (N.D. Cal. 2016) ("In such a situation, the ALJ also gives germane reasons for rejecting other lay witness testimony where it is found to be similar to the claimant's.").

For the reasons stated above, the court finds that plaintiff is not entitled to summary judgment on the claim that the ALJ's treatment of the lay witness testimony constituted error.

////

**IV.    Step Five Finding**

Finally, plaintiff argues that the ALJ's finding as step five of the sequential evaluation was not supported by substantial evidence due to the ALJ's errors with respect to the opinions of Dr. Holscher, LCSW Stoval, and Dr. White.  (Pl.'s MSJ (ECF No. 14) at 17-18.)

At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'"  Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted).  The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the grids.  See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006).

Here, the ALJ relied on the testimony of a VE.  (Tr. at 32.)  However, as noted above, while an ALJ may pose a range of hypothetical questions to a vocational expert ("VE") based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant.  Bray, 554 F.3d at 1228.  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  Id. (citation and quotation marks omitted); see also Taylor, 659 F.3d at 1235 ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, given the ALJ's erroneous treatment of the opinions offered by Dr. Holscher, LCSW Stoval, and Dr. White the ALJ's questioning of the VE did not account for all of plaintiff's limitations.  Accordingly, plaintiff is also entitled to summary judgment on the claim that the ALJ committed an error at step five of the sequential evaluation.

**CONCLUSION**

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"  Trevizo, 871 F.3d

at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be

remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains

"flexibility to remand for further proceedings when the record as a whole creates serious doubt as

to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at

1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court

concludes that further administrative proceedings would serve no useful purpose, it may not

remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,

775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is

uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, the court cannot say that further administrative proceedings would serve no useful

purpose, particularly given the varying outcomes of plaintiff's claims of error. This matter,

therefore, will be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 14) is granted in part and denied in

part;

2. Defendant's cross-motion for summary judgment (ECF No. 23) is granted in part and

denied in part;

3. The Commissioner's decision is reversed;

4. This matter is remanded for further proceedings consistent with this order; and

////

////

////

16

1       5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

2    Dated:  March 10, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

6    DLB:6
DB\orders\orders.soc sec\eilts2037.ord